# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

THE ESTATE OF                                                                    PLAINTIFFS
JOSEPH CONWAY MANUS, et al.

V.                                                          CIVIL ACTION NO. 1:11-CV-00149-SA-DAS

WEBSTER COUNTY, MISSISSIPPI, et al.                                           DEFENDANTS

## ORDER ON RECONSIDERATION

Defendants Greg Hunter, the Estate of Keith Crenshaw, and the City of Eupora have filed an Expedited Motion for Reconsideration [327] of the Court's Order [324] and Memorandum Opinion [325]. Specifically, these Defendants request that the Court reconsider its denial in part of their Motion for Summary Judgment [177] based upon qualified immunity with regard to Plaintiffs' claims against them for excessive force and denial of medical care. Upon due consideration of the motion, responses, rules, and authorities, the Court finds the motion should be GRANTED IN PART and DENIED IN PART.

*Factual and Procedural Background*

As the Court stated in its Memorandum Opinion [325], the facts of this matter are complex and highly disputed. Joseph Conway Manus ("Manus") originally brought this action, asserting constitutional claims brought through 42 U.S.C. § 1983, as well as various state law claims. Manus alleged that on September 7, 2010 law enforcement officers from Webster County, Mississippi; Eupora, Mississippi; and Mathiston, Mississippi used excessive force against him in order to effectuate an unlawful arrest and denied him medical care during the seven days that he was in their custody. As a result, Manus claimed he suffered serious injuries, including quadriplegia.[1] Manus died on December 1, 2012 while this lawsuit was pending.

---

[1] Dr. Louis Rosa diagnosed Manus with quadriplegia caused by a fracture at the C6-C7 vertebrae on September 16, 2010, two days after Manus was transported from the Webster County jail to the hospital.

After his death, Manus' widow, Miranda Manus, acting on her own behalf as well as with Manus' mother, Lois Manus, on behalf of all wrongful death beneficiaries, and Manus' estate were substituted as Plaintiffs. Plaintiffs filed an Amended Complaint adding a claim for wrongful death on June 6, 2013. All Defendants filed motions for summary judgment, asserting, among other things, that Plaintiffs' claims are barred by the doctrines of qualified immunity and the Mississippi Tort Claims Act. The Court granted in part and denied in part these motions in its Order and Memorandum Opinion entered March 31, 2014. Relevant to the instant motion, the Court found that genuine issues of material fact precluded the grant of summary judgment and qualified immunity in favor of Eupora Police Chief Greg Hunter, Eupora Police Officer Keith Crenshaw,[2] and the City of Eupora with regard to Plaintiffs' claims against them for bystander liability for excessive force[3] and for the denial of medical care. These Defendants now move the Court to reconsider its denial of summary judgment and qualified immunity as to these claims.

---

[2] Officer Crenshaw died on October 23, 2013. His estate has been substituted as a party defendant.

[3] Though the Court clearly stated in the body of its Memorandum Opinion that Defendants Hunter and Crenshaw, as well as Defendants Smith, Miller, May, Kilgore, and Britt were not entitled to qualified immunity and that summary judgment was improper with regard to Plaintiffs' claims against them for excessive force based upon a bystander liability theory, the Court's Order, as well as the conclusion of its Memorandum Opinion, inadvertently omitted these claims. In listing the claims that survived Defendants' motions for summary judgment, the Court's Order and Memorandum Opinion should have additionally stated:

- Use of excessive force in violation of the Fourth Amendment by Sheriff Smith and Deputy May, in their individual capacities; Chief Miller, in his individual and official capacities; Officer Jackson, in his individual capacity; Webster County, Eupora, and Mathiston; **liability as a bystander by Chief Hunter and Chief Miller, in their individual and official capacities; Officer Crenshaw, Sheriff Smith, Deputy May, Deputy Kilgore, and Dispatcher/Deputy Britt, in their individual capacities; Webster County, Eupora, and Mathiston;**

(emphasis added). The Court's omission was merely a scrivener's error and should not be interpreted as the dismissal of these claims. Further, given that the instant motion deals specifically with the Court's refusal to dismiss these claims on summary judgment, it is obvious that the parties have not interpreted the Court's inadvertent omission as dismissing these claims.
  Similarly, in a footnote to its Memorandum Opinion, the Court mistakenly stated that "Plaintiffs' claims against Officer Crenshaw, Officer Jackson, and Officer Box in their **individual** capacities must be dismissed" (emphasis added), when in fact, the claims due to be dismissed were those against these Defendants in their official capacities. Again, the Court's error was purely clerical and the body of the Court's Memorandum Opinion, as well as the Court's Order and the conclusion of its Memorandum Opinion, correctly identified the claims against these Defendants that survived summary judgment.

*Reconsideration Standard*

A denial of summary judgment is an interlocutory order under Federal Rule of Civil Procedure 54(b), which the Court "may reconsider and reverse any time before entering final judgment." Millar v. Houghton, 115 F.3d 348, 350 (5th Cir. 1997). While the Fifth Circuit has recognized under the collateral order doctrine a narrow exception to Rule 54(b) allowing for the immediate appeal of some denials of summary judgment based upon qualified immunity, a district court's decision to deny qualified immunity based upon evidentiary sufficiency is not such a final decision. Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir. 1996) (citing Johnson v. Jones, 515 U.S. 304, ---, 115 S. Ct. 2151, 2156, 132 L. Ed. 2d 238 (1995)); see also Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (clarifying that Johnson did not hold that every denial of summary judgment including a determination that genuine issues of material fact exist are nonappealable but rather that "if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision'").

Thus, in cases such as the one presently before the Court, "Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order 'for any reason it deems sufficient.'" United States v. Renda, 709 F.3d 472, 479 (5th Cir. 2013). This is so "even in the absence of new evidence or an intervening change in or clarification of the substantive law." Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210-11 (5th Cir. 2010) (quoting Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994)).

*Analysis and Discussion*

Bystander Liability – Excessive Force

The Court first addresses Defendants' argument that the Court erred by finding a genuine issue of material fact as to whether Hunter and Crenshaw witnessed the use of excessive force by other officers against Manus and failed to take reasonable steps to protect him.

As the Court has stated, the evidence presented in this case is highly contradictory. Each party describes the events of September 7, 2010 differently and many contradict not only other witnesses but also their own testimony and/or statements. Given the many conflicts within the summary judgment record, it is exceedingly important for the Court to be ever mindful of its duty at this stage of litigation to draw any inferences and resolve any disputes of material facts in favor of Plaintiffs. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Little, 37 F.3d at 1075. The Supreme Court very recently highlighted the importance of this principle in Tolan v. Cotton, 13-551, 2014 WL 1757856 (U.S. May 5, 2014). In that case, the Supreme Court articulated that, even in the context of qualified immunity, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan, 13-551, 2014 WL 1757856, at *4 (U.S. May 5, 2014).

Thus, viewing the evidence in the light most favorable to Plaintiffs, the Court finds no basis for reconsidering its denial of summary judgment and qualified immunity with regard to Plaintiffs' claim of bystander liability for excessive force against Hunter. Manus testified that "somebody" from Eupora was in the room at the time Webster County Sheriff Phillip Smith allegedly hit him with a bat. While this testimony would be insufficient on its own to overcome Hunter's assertion of qualified immunity, Manus also specifically testified that Hunter was in his

bedroom.[4] Further, Webster County Deputy Kilgore testified in his deposition that Hunter arrived at the scene before the officers entered Manus' bedroom, and both he and Webster County Deputy May stated in writing shortly after the incident that Hunter was present before the officers entered Manus' bedroom. Hunter also testified that he was in the room when Manus was handcuffed, and Manus testified that the bat attack occurred after he was handcuffed. Both Manus and Lois Manus testified that Hunter was still on the scene when the officers removed Manus from the residence.

Though disputed by other testimony, this evidence creates a genuine issue of material fact for trial as to whether Hunter witnessed the entire alleged incident at issue, including Smith hitting Manus with a bat and forcefully landing on his neck with his knee, as well as Mathiston Police Chief Roger Miller macing and Webster County Deputy Derek May tasing Manus, all while Manus was compliant and nonresistant. Whereas the Court has determined that such acts would have constituted excessive force and that it would have been objectively unreasonable in light of the clearly established law at the time to witness these acts but fail to intervene to protect Manus, the Court declines to reconsider its denial of qualified immunity and summary judgment in favor of Hunter on this claim. Further, as Hunter was the Chief of Police for the City of Eupora at the time of the incident, the Court likewise declines to reconsider its denial of summary judgment in favor of the City of Eupora.

However, upon reconsideration, the Court agrees that Plaintiffs failed to establish a genuine issue of material fact as to whether Crenshaw witnessed Smith hit Manus with a bat. Unlike Hunter, there is no evidence specifically placing Crenshaw at the scene before the officers entered Manus' room. Manus testified that Crenshaw was in his bedroom at some point

---

[4] The Court notes that Manus testified later in the same deposition that Hunter was only in the hall and was not in the bedroom. However, the Court is bound, for purposes of summary judgment, to refrain from weighing the credibility of these conflicting statements and to view Manus' testimony in the light most favorable to Plaintiffs.

but that he did not know when he arrived. However, Manus also testified that Crenshaw was not in the bedroom at the time Smith hit him with a bat. Crenshaw testified in his deposition that he arrived in his personal vehicle just after Hunter but that he never entered the residence because the other officers were already escorting Manus out of the residence. Lois Manus testified that Crenshaw and Hunter arrived at the same time but approximately ten to fifteen minutes after Smith hit Manus with the bat. As the Court has stated, Manus' testimony that "somebody" from Eupora was in his bedroom at the time Smith hit him with the bat, standing alone, is not enough to raise a genuine issue of material fact as to whether Crenshaw witnessed Smith hitting Manus with a bat. See Little, 37 F.3d at 1075 (In rebutting summary judgment motion, nonmovant's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' . . . or by only a 'scintilla' of evidence.").

Still, the record evidence does place Crenshaw in the residence at some point before the conclusion of the incident at issue. Lois Manus testified that Crenshaw saw Miller spraying mace in Manus' face and May tasing Manus on the leg while Manus was lying on the ground, handcuffed and not resisting. Miller conceded that a genuine issue of material fact exists as to whether his conduct constituted excessive force and did not assert a defense of qualified immunity as to Plaintiffs' claim against him. Additionally, the Court determined that May was not entitled to qualified immunity at the summary judgment stage because a genuine issue of material fact existed as to whether May had committed the conduct alleged such that he violated Manus' clearly established constitutional right to be free from excessive force. Whereas the Court determined that the duty of an officer who is present at the scene to take reasonable measures to protect a suspect from another officer's use of excessive force was clearly established at the time of the incident at issue and Lois Manus testified that Crenshaw did not

6

attempt to stop Miller or May, the Court found that Crenshaw was not entitled to qualified immunity as to Plaintiffs' claim against him based upon a theory of bystander liability.

Defendants now argue that the Court erred because Crenshaw did not have a reasonable opportunity to realize the excessive nature of the force being used against Manus or a realistic opportunity to intervene. While the Court is bound to view the evidence on summary judgment in the light most favorable to the nonmovant, it is the plaintiff's burden to rebut a defendant's assertion of qualified immunity. Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005). "To prevail, a plaintiff must present evidence that, viewed in the light most favorable to him, presents a genuine issue of material fact that (1) the defendant's conduct amounts to a violation of the plaintiff's constitutional rights; and (2) the defendant's actions were 'objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Estate of Cheney ex rel. Cheney v. Collier, 13-60082, 2014 WL 1133564, at *1 (5th Cir. Mar. 24, 2014) (per curiam) (quoting Cantrell v. City of Murphy, 666 F.3d 911, 922 (5th Cir. 2012)).

Lois Manus testified that she followed Hunter and Crenshaw down the hall when they arrived at the residence and that she saw Manus lying on the floor face up with his hands behind his back with Miller macing and May tasing him. She further testified that Manus was not resistant or fighting and was completely quiet. She testified that when she saw this she yelled, "They are killing my son." According to Lois Manus, at that point, the officers in the room picked Manus up and escorted him out of the house. In isolation, this testimony would seem to show only that Crenshaw came upon acts already in progress and that the officers engaging in those acts ceased their conduct almost immediately. However, Manus testified that, although he didn't know where Crenshaw was when he was on the ground, Crenshaw was in his bedroom, leaning against his dresser, when the officers picked him up from the floor following the alleged use of excessive force. Further, Lois Manus also testified in her deposition that Crenshaw and

7

Hunter had "perched" on either side of the door and looked into the bedroom when she decided to follow them down the hall to see what was happening, and Manus testified that after May tased him and "before [they] got up out of the floor, Smith dropped down real hard on [his] neck." These statements contradict the conclusion that the officers ceased their use of excessive force immediately upon Crenshaw's arrival on the scene, before he could assess the situation and intervene.

Thus, the Court, drawing all inferences in favor of Plaintiffs, finds Plaintiffs' have submitted sufficient evidence to create genuine issues of material fact as to whether Crenshaw entered the room prior to the conclusion of the incident at issue, whether Crenshaw arrived on the scene in time to realize the excessive nature of the force allegedly being used against Manus, and whether Crenshaw failed to intervene to protect Manus, despite having the opportunity to do so. Accordingly, though the Court agrees upon reconsideration that Plaintiffs failed to establish a genuine issue of fact as to whether Crenshaw witnessed Smith hit Manus with a bat, the Court nevertheless declines to reconsider its denial of summary judgment and qualified immunity with regard to Crenshaw on the basis that other genuine issues of material fact exist which preclude a determination that Crenshaw's actions were objectively reasonable.

## Denial of Medical Care

Next, the Court turns to Defendants contention that the Court erred by finding that a genuine issue of material fact exists with regard to whether Hunter and Crenshaw were deliberately indifferent to Manus' serious medical needs. Having found a genuine issue of material fact as to whether Hunter witnessed, among other things, Smith hit Manus in the neck with a bat twice, the Court likewise declines to reconsider its denial of qualified immunity and summary judgment in favor of Hunter with regard to Plaintiffs' claims against him for denial of

8

medical care. As with Plaintiffs' excessive force bystander liability claim, the Court additionally declines to reconsider its denial of summary judgment in favor of the City of Eupora.

With regard to Crenshaw, however, the Court has reconsidered and determined that no genuine issues of material fact exist with regard to whether Crenshaw witnessed Smith hit Manus with a bat. Still, as the Court has explained, there are genuine issues of material fact with regard to when Crenshaw arrived at the scene and whether he witnessed Manus being tased and maced by May and Miller and Smith dropping down with force onto Manus' neck with his knee. Manus testified that he was bleeding from the back of his head and that he requested medical care in Crenshaw's presence, but he also testified that he walked out of the residence.

"Deliberate indifference is an extremely high standard to meet." Blank v. Eavenson, 530 F. App'x 364, 368 (5th Cir. 2013) cert. denied, --- U.S. ---, 134 S. Ct. 623, 187 L. Ed. 2d 404 (2013) (quoting Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)). In order to prevail on a claim of deliberate denial of medical care, a plaintiff must show that the defendant had "subjective knowledge of a substantial risk of serious medical harm" and was deliberately indifferent in disregarding that risk. Nerren v. Livingston Police Dept., 86 F.3d 469, 473 (citing Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). Further, the Fifth Circuit has held that a plaintiff alleging such a claim must "establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." Wagner v. Bay City, Tex., 227 F.3d 316, 324 (5th Cir. 2000). Specifically, a plaintiff "must show not only that the defendants' actions in failing to provide [him] medical attention . . . were objectively unreasonable, but also that defendants intended the consequence of those actions." Id. "Mere negligence will not suffice, and deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a failure to act reasonably." Blank, 530 F. App'x at 368 (quoting Wagner, 227 F.3d at 324) (alterations, citations, and internal quotation marks omitted)).

Though Plaintiffs have raised genuine issues of material fact with regard to whether Crenshaw witnessed the use of excessive force against Manus, the Court finds Plaintiffs have failed to establish Crenshaw had the requisite knowledge of a "substantial risk of serious medical harm" as a result of the force he allegedly witnessed. Further, while Crenshaw's failure to seek medical care for Manus may have been unreasonable or even negligent, Plaintiffs have failed to establish that Crenshaw subjectively intended to cause harm to Manus by not providing him with medical care at the scene. Accordingly, the Court finds upon reconsideration that Plaintiffs have failed to overcome their burden to rebut Crenshaw's assertion of qualified immunity and their claim for deliberate denial of medical care is due to be dismissed with prejudice.

*Conclusion*

For the foregoing reasons, the Court declines to reconsider its denial of summary judgment as to Chief Hunter, Officer Crenshaw, and the City of Eupora with regard to Plaintiffs' claims of bystander liability for excessive force. Additionally, the Court declines to reconsider its denial of summary judgment in favor of Chief Hunter and the City of Eupora as to Plaintiffs' claims for deliberate denial of medical care. However, with regard to Plaintiffs' claim against Officer Crenshaw for deliberate denial of medical care, the Court reconsiders and reverses its denial of summary judgment based upon qualified immunity, and hereby dismisses this claim with prejudice.

SO ORDERED, this the 28th day of May, 2014.

                                                   /s/ Sharion Aycock
                                                   UNITED STATES DISTRICT JUDGE