# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

THE ESTATE OF                                                      PLAINTIFFS
JOSEPH CONWAY MANUS, et al.

V.                                                     CIVIL ACTION NO. 1:11-CV-00149-SA-DAS

WEBSTER COUNTY, MISSISSIPPI, et al.                          DEFENDANTS

## ORDER ON MOTION TO CLARIFY

This cause comes before the Court on Plaintiffs' Motion to Clarify [351]. Plaintiffs seek clarification of the Court's Order [324] and Memorandum Opinion [325] entered in this matter March 31, 2014. Specifically, Plaintiffs' move the Court for an on-the-record explanation of whether the Court's prior ruling barred certain evidence relating to Plaintiffs' claims for deliberate denial of medical care against the remaining Defendants. Upon due consideration of the motions, responses, rules, and authorities, the Court finds as follows:

PROCEDURAL BACKGROUND

This action involves claims brought by the estate of Joseph Conway Manus ("Manus") and his widow, on behalf of herself and all wrongful death beneficiaries, against various law enforcement agencies and personnel stemming from an altercation on September 7, 2010. Plaintiffs allege law enforcement officers from Webster County, Mississippi; Eupora, Mississippi; and Mathiston, Mississippi used excessive force against Manus in order to effectuate an unlawful arrest and denied him medical care during the subsequent seven days that he was in their custody. Plaintiffs claim Manus suffered serious injuries, including quadriplegia, and ultimately died on December 1, 2012 as a result of Defendants actions.

All Defendants filed motions for summary judgment, asserting, among other things, that Plaintiffs' claims are barred by the doctrines of qualified immunity and the Mississippi Tort

Claims Act. The Court granted in part and denied in part these motions in its Order and Memorandum Opinion entered March 31, 2014. Pertinent to the instant motion, the Court denied summary judgment on Plaintiffs' claims for denial of medical care in violation of the Fourteenth Amendment with regard to Defendants Eupora Police Chief Greg Hunter, Eupora Police Chief Roger Miller, the estate of Eupora Police Officer Keith Crenshaw,[1] the City of Eupora, Mississippi, and the City of Mathiston, Mississippi.

Thereafter, Eupora Police Chief Greg Hunter, the estate of Eupora Police Officer Keith Crenshaw, and the City of Eupora filed a Motion for Reconsideration [327] requesting the Court reconsider its finding that genuine issues of material fact precluded the grant of summary judgment and qualified immunity in their favor with regard to Plaintiffs' claims against them for excessive force bystander liability and for the denial of medical care. The Court declined to reconsider [338] its prior opinion with regard to Plaintiffs' claims against these Defendants for excessive force bystander liability and Plaintiffs' claims against Chief Hunter and the City of Eupora for deliberate denial of medical care. However, the Court reversed its finding with regard to Plaintiffs' claim for deliberate denial of medical care against Officer Crenshaw and dismissed that claim with prejudice.

Subsequently, Plaintiffs reached a settlement agreement with Defendants Webster County, Mississippi, Phillip Bowen Smith, Jeremy Kilgore, Derek Mays, Shay Holmes, and Toby Britt. The Court entered an Order [350] dismissing all remaining claims against these Defendants without prejudice on July 31, 2014.

## DISCUSSION AND ANALYSIS

Plaintiffs seek to "present evidence and testimony" at trial "regarding the alleged negligent acts of the Municipal Defendants for the period of time September 8-14, 2010."

---

[1] Officer Crenshaw died while this action was pending, and his estate was substituted as a party defendant.

However, the parties dispute whether Plaintiffs stated claims for relief against the remaining Defendants[2] in their Amended Complaint [249] based upon these Defendants' acts or omissions committed after September 7, 2010. To the extent Plaintiffs did allege claims based on events after September 7, the parties additionally dispute whether, pursuant to the Court's ruling on summary judgment, any such claims remain for trial. In particular, the parties disagree with regard to whether Plaintiffs may offer evidence at trial in support of claims for denial of medical care by the Defendants based upon events occurring after September 7, 2010.

While the claims asserted in the Amended Complaint are laid out generally,[3] Plaintiffs provide detailed factual support over approximately four pages of text. However, with respect to the Municipal Defendants, the only factual allegations arguably made against them are as follows:

> During this time [referring to the initial altercation at Manus' residence on September 7, 2010], Defendant, Chief Roger Miller of Mathiston Police Department arrived, entered the bedroom and sprayed Manus' face with mace.
>
> Defendant Police Chief Greg Hunter and Defendant Officer Keith Crenshaw of the Eupora Police Department arrived at some point during the beating [at Manus' residence] and were present in the hallway and bedroom while the beating occurred. Both Defendant Hunter and Crenshaw could have prevented or aided in preventing the beating of Manus and other wrongs committed against him, but failed to use reasonable diligence and knowingly, recklessly, or with gross negligence failed to do so. Defendant, Shane Box, Mathiston Police Officer arrived and assisted Defendants while they were outside of the house.
>
> The entire incident [again referring to the struggle at Manus' home on September 7, 2010] lasted approximately 30-40 minutes. Manus was severely beaten and injured by the Defendants.

---

[2] For clarity, these Defendants are: City of Eupora, Mississippi; City of Mathiston, Mississippi; Eupora Police Chief Greg Hunter; the Estate of Eupora Officer Keith Crenshaw; Eupora Officer Mitch Jackson; and Mathiston Police Chief Roger Miller.

[3] e.g., "Plaintiffs . . . hereby assert[] the following claims against the Defendants . . . : (1) violation of 42 U.S.C. 1983: arrest, (2) violation of 42 U.S.C. 1983: detention and confinement . . . ;" "As a result of their concerted unlawful and malicious detention and confinement of Manus, Defendants deprived Manus of . . . his right to his liberty . . . ."

> At the Webster County Jail, Defendant . . . Eupora Police Officer Mitch Jackson removed Manus from Defendant Mays' patrol car and took him inside the jail. . . . Defendant Jackson threw the hand cuffed Manus against walls and cell bars and left him on the floor. They [referring to Defendant Jackson and one of the dismissed County Defendants] also beat Manus while he lay on the floor.

Plaintiffs make no other factual allegations against the Municipal Defendants but, with the exception of Count 5,[4] allege all claims against all Defendants.

In their Motion for Summary Judgment [177], Municipal Defendants sought the dismissal of "all claims against the City of Eupora, Mississippi, Chief Greg Hunter, Officer Keith Crenshaw, the City of Mathiston, Mississippi, and Officer Shane Box" and all claims against Mathiston Police Chief Roger Miller and Eupora Officer Mitch Jackson other than Plaintiffs' claims against them for excessive force in violation of the Fourth Amendment. In response to the instant motion for clarification, Defendants highlight the following portion of their brief in support of their motion for summary judgment:

> It is undisputed that when Officer Jackson left the Webster County Jail the afternoon of September 7, he was the last City of Eupora and/or Mathiston officer Plaintiff recalls seeing. [citation omitted]. Therefore, no Municipal Defendants had any involvement in the events that followed.

In response, Plaintiffs claimed that on September 8, Eupora Officer Lawrence Caradine observed Manus condition in the jail and told the jailer on duty that Manus needed medical attention. Plaintiffs also alleged that

> [d]uring this entire week [Manus was] in custody at the jail, inmate trustee Walter Logan saw Mathiston Chief Roger Miller, Mathiston officer Shane Box and several Eupora Police officers enter the jail where Manus was being held. They were in the jail and would have been aware of his need for medical attention and refused his requests.

---

[4] Plaintiffs specifically direct the allegations of Count 5 of the Amended Complaint (Violation of 42 U.S.C. 1983: Refusing or Neglecting to Prevent) as against: "Defendants, John Does, Defendant City of Mathiston and City of Mathiston Police Department and Defendant City of Eupora . . . and City of Eupora Police Department and Webster County, Mississippi and Webster County Sheriff's Office."

4

Additionally, Plaintiffs placed particular emphasis on the testimony of Dr. Jewel that on September 7, after Manus' arrest, one of the County Defendants stated that the officers had tried to break Manus' neck and that none of the other officers present, including Hunter, Jackson, Miller, and Box, contradicted the statement.

However, Lawrence Caradine testified in his deposition that he works as a patrolman for the Eupora Police Department and Plaintiffs offered no evidence, nor made any argument, that Caradine had any type of supervisory responsibilities that might confer liability to the City of Eupora, Mississippi. Further, Caradine testified that he went to the jail in response to a call for assistance from one of the Webster County jailers and that he told that jailer to call her boss, another Webster County employee, to try to get Manus medical attention. Plaintiffs offered no evidence that Caradine ever told any Eupora or Mathiston Defendant about Manus or that any of those Defendants had any knowledge from any other source of Manus' condition.

Similarly, Walter Logan testified only that Miller and Box were present at the jail but did not testify that either Miller or Box ever saw Manus or had any reason to be aware of Manus' condition. Rather, Logan testified that he only saw Miller and Box at the front desk and that he never saw anyone try to talk to Manus while he was in custody. Logan did not testify that any other Municipal Defendant ever saw or had reason to know of Manus' deteriorating health and Plaintiffs offered no other evidence placing any Municipal Defendant at the jail while Manus was confined there.

The Court specifically denied summary judgment on Plaintiffs' claims for denial of medical care against Miller, Hunter, and Crenshaw on the basis that "genuine issues of material fact exist with regard to whether Sheriff Smith hit Manus twice in the neck with a bat [at Manus' residence on September 7, 2010] and whether each of these Defendants witnessed Sheriff

5

Smith's alleged conduct." Thus, the Court found that "genuine issues of material fact also exist as to whether these Defendants had 'subjective knowledge of a substantial risk of serious medical harm' and were deliberately indifferent in disregarding that risk." (citation omitted).[5]

The Court rejected Plaintiffs' argument that Dr. Huffman's testimony established that a conspiracy existed amongst the Defendants to violate Manus' rights. At most, Dr. Huffman's testimony is evidence that a significant struggle took place at Manus' residence on September 7, but it does not establish any additional liability on the part of the remaining Defendants beyond that which the Court recognized in its opinion. Dr. Huffman's testimony, like the testimony of Caradine and Logan, does not raise a genuine issue of material fact with regard to whether any remaining Defendant was involved with Manus' medical care or had any interaction with Manus after September 7, that would show he "knew of and disregarded an excessive risk" to Manus' health or safety as required to prove a claim of deliberate indifference denial of medical care. Gibbs v. Grimmette, 254 F.3d 545, 549 (citing Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999)). Thus, to the extent Plaintiffs' Amended Complaint stated claims against the Municipal Defendants for denial of medical care based upon their acts or omissions occurring after September 7, 2010, the Court finds any such claims were dismissed with prejudice at summary judgment.

CONCLUSION

Accordingly, Plaintiffs' request "to present evidence and testimony regarding the alleged negligent acts of the Municipal Defendants for the period of time September 8-14, 2010" is

---

[5] As the Court has explained, upon reconsideration the Court granted summary judgment on this claim in favor of Crenshaw.

DENIED.[6]  However, Plaintiffs will be allowed to proffer such evidence for purposes of appeal. The only claims remaining for trial are:

- Use of excessive force in violation of the Fourth Amendment:
    - Chief Miller, in his individual and official capacities;
    - Officer Jackson, in his individual capacity;
    - City of Mathiston, Mississippi;
- Excessive force bystander liability:
    - Chief Hunter and Chief Miller, in their individual and official capacities;
    - Officer Crenshaw, in his individual capacity;
    - City of Eupora, Mississippi;
    - City of Mathiston, Mississippi;
- Denial of medical care in violation of the Fourteenth Amendment:
    - Chief Hunter and Chief Miller, in their individual and official capacities;
    - City of Eupora, Mississippi;
    - City of Mathiston, Mississippi;
- State law claims based on the acts of Chief Hunter, Officer Crenshaw, Officer Jackson, and Chief Miller in reckless disregard relating to the arrest of Manus;
- State wrongful death claims brought by Miranda Manus on behalf of all wrongful death beneficiaries, based on Chief Hunter's, Officer Crenshaw's, Officer Jackson's, and Chief Miller's acts or omissions not within the course and scope of

---

[6] In addition to the Court's finding that Plaintiffs' purported claims for denial of medical care based upon the acts or omissions of the remaining Defendants occurring after September 7, 2010 are barred by its prior ruling on summary judgment, "[d]eliberate indifference is more than mere negligence in failing to supply medical treatment." Gibbs, 254 F.3d at 549 (citing Stewart, 174 F.3d at 534; Williams v. Treen, 671 F.2d 892, 901 (5th Cir. 1982)); see Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) ("Unsuccessful medical treatment does not give rise to a § 1983 cause of action. Nor does '[m]ere negligence, neglect or medical malpractice.'") (quoting Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1979)) (internal citation omitted).

employment or within the course and scope of employment but not arising while Manus was in custody.

SO ORDERED, this the 6th day of August, 2014.

                                             /s/ Sharion Aycock_____
                                           UNITED STATES DISTRICT JUDGE