**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

THE ESTATE OF                                                                                                    PLAINTIFFS
JOSEPH CONWAY MANUS, et al.

V.                                                                             CIVIL ACTION NO. 1:11-CV-00149-SA-DAS

WEBSTER COUNTY, MISSISSIPPI, et al.                                                                    DEFENDANTS

## **ORDER ON MOTIONS TO EXCLUDE**

This cause comes before the Court on Municipal Defendants' Motion to Exclude [283] and Plaintiffs' Motion to Exclude [340]. Defendants move the Court to exclude the testimony of Erin A. Barnhart, M.D., the autopsy report prepared by Dr. Barnhart, and an affidavit signed by Dr. Barnhart. Plaintiffs move the Court to exclude the testimony of E. Thomas Cullom, III, M.D. Upon due consideration of the motions, responses, rules, and authorities, the Court finds as follows:

FACTUAL AND PROCEDURAL BACKGROUND

Joseph Conway Manus ("Manus") originally brought this action, asserting constitutional claims brought through 42 U.S.C. § 1983, as well as various state law claims. Manus alleged that on September 7, 2010 law enforcement officers from Webster County, Mississippi; Eupora, Mississippi; and Mathiston, Mississippi used excessive force against him in order to effectuate an unlawful arrest and denied him medical care during the seven days that he was in their custody. As a result, Manus claimed he suffered serious injuries, including quadriplegia.[1] Manus died on December 1, 2012 while this lawsuit was pending.

After his death, Manus' widow, Miranda Manus, acting on her own behalf as well as with Manus' mother, Lois Manus, on behalf of all wrongful death beneficiaries, and Manus' estate

---

[1] Dr. Louis Rosa diagnosed Manus with quadriplegia caused by a fracture at the C6-C7 vertebrae on September 16, 2010, two days after Manus was transported from the Webster County jail to the hospital.

were substituted as Plaintiffs. Plaintiffs filed an Amended Complaint adding a claim for wrongful death on June 6, 2013. All Defendants filed motions for summary judgment, asserting, among other things, that Plaintiffs' claims are barred by the doctrines of qualified immunity and the Mississippi Tort Claims Act. The Court granted in part and denied in part these motions in its Order and Memorandum Opinion entered March 31, 2014.

Thereafter, Eupora Police Chief Greg Hunter, the estate of Eupora Police Officer Keith Crenshaw,[2] and the City of Eupora filed a Motion for Reconsideration [327] requesting the Court reconsider its finding that genuine issues of material fact precluded the grant of summary judgment and qualified immunity in their favor with regard to Plaintiffs' claims against them for excessive force bystander liability and for the denial of medical care. The Court declined to reconsider [338] its prior opinion with regard to Plaintiffs' claims against these Defendants for excessive force bystander liability and Plaintiffs' claims against Chief Hunter and the City of Eupora for deliberate denial of medical care. However, the Court reversed its finding with regard to Plaintiffs' claim for deliberate denial of medical care against Officer Crenshaw and dismissed that claim with prejudice.

Subsequently, Plaintiffs reached a settlement agreement with Webster County and the individual County Defendants, and the Court entered an Order [350] dismissing Plaintiffs' claims against these Defendants without prejudice on July 31, 2014.

In ruling on the summary judgment motions in this matter, the Court determined that the qualified immunity analysis at the summary judgment stage did not require the Court to rely upon the testimony of Dr. Barnhart or James Wells.[3] However, the Court recognized that prior to trial, a hearing would be necessary to determine whether the proffered testimony, together

---

[2] Officer Crenshaw died on October 23, 2013. His estate has been substituted as a party defendant.

[3] On the same day Defendants' filed their Motion to Exclude Dr. Barnhart, Dr. Barnhart's Affidavit, and Autopsy Report [283], Defendants also filed a Motion to Exclude Death Certificate and Testimony of James S. Wells [285].

with certain related documents, is admissible and/or meets the requirements set forth by <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Consequently, on July 25, 2014, the Court held an evidentiary hearing on Defendants' Motions *in Limine* [283, 285].[4] After receiving testimony from Wells and Dr. Barnhart along with various exhibits, the Court denied Defendants' Motion to Exclude Death Certificate and Testimony of James S. Wells [285][5] and took Defendants' Motion to Exclude Dr. Barnhart, Dr. Barnhart's Affidavit, and Autopsy Report [283] under advisement.

## STANDARD

Pursuant to the Federal Rules of Evidence,

> If [a] witness is only testifying as a lay witness, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

<u>United States v. Cooks</u>, 589 F.3d 173, 179-80 (5th Cir. 2009) (citing FED. R. EVID. 701.). In other words, "the distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." <u>Id.</u> at 180. "Moreover, any part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." <u>Id.</u> at 180 (citing FED. R. EVID. 701 advisory committee's note).

---

[4] Plaintiffs' Motion to Strike [340] was not yet ripe at the time of the hearings.

[5] The Court found the death certificate to be properly admitted as a public record of vital statistics, an exception to the rule against hearsay under Rule 803(9). <u>See</u> FED. R. EVID. ("A record of a birth, death, or marriage, if reported to a public office in accordance with a legal duty."). The Court additionally reserved ruling on Defendants' Rule 403 challenge to Wells' testimony and the death certificate until trial. <u>See</u> FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

With regard to the opinions of experts, Federal Rule of Evidence 702 allows testimony from "a witness qualified as an expert by knowledge, skill, experience, training, or education" if such testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Thus, the trial court must ensure that any and all testimony or evidence is not only relevant, but also reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). An expert, to state an opinion, must have a reliable basis in the knowledge and experience of his discipline." Id. at 592, 113 S. Ct. 2786. Under Rule 703, an expert must base his opinion upon facts and data of a type reasonably relied upon by experts in the field. Id. at 595, 113 S. Ct. 2786.

The Court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. Id. at 592–93, 113 S. Ct. 2786. The Supreme Court outlined a set of factors that may be used to make this determination, including:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

Moore v. Ashland Chem. Inc., 151 F.3d 269, 275 (5th Cir. 1998) (citing Daubert, 509 U.S. at 593-95, 113 S. Ct. 2786). These factors "form the starting point of the inquiry into the admissibility of expert testimony." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 245 (5th Cir. 2002).

In Kumho Tire, Co., Ltd. v. Carmichael, the Supreme Court expanded the Daubert "gatekeeping" obligation of the trial court to apply not only to testimony based on "scientific"

knowledge, but also "technical" and "other specialized" knowledge. 526 U.S. 137, 141, 147–48, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). The Supreme Court explained that trial courts enjoy "broad latitude" when deciding how to determine reliability and that the Court's gatekeeping function must be tied to the particular facts of the case. Id. at 151-53, 149–51, 119 S. Ct. 1167.

While the Court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," id. at 152, 119 S. Ct. 1167, "the heart of Daubert is relevance and reliability." Rushing v. Kansas City So., 185 F.3d 496, 507 (5th Cir. 1999). "As long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gatekeeping function. After that qualifications become an issue for the trier of fact, rather than for the court in its gatekeeping capacity." Id. (citing Daubert, 509 U.S. at 596, 113 S. Ct. 2786). Further, the Fifth Circuit has held that "[m]ost of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000).

DISCUSSION AND ANALYSIS

Defendants' Motion to Exclude Dr. Barnhart, Dr. Barnhart's Affidavit, and Autopsy Report

*Dr. Barnhart's Affidavit*

At the hearing on Defendants' motions, Plaintiffs' counsel represented to the Court that Plaintiffs do not intend to introduce the affidavit at issue, signed by Dr. Barnhart on May 30, 2013, at trial. Thus, the Court finds that Defendants' Motion to Exclude [283] is MOOT insofar as it relates to Dr. Barnhart's affidavit. Defendants may, of course, renew their objections at the appropriate time should Plaintiffs later attempt to introduce this evidence at trial.

*Testimony of Dr. Barnhart*

Defendants do not contest Dr. Barnhart's qualifications as a forensic pathologist or her ability to testify as to her physical findings resulting from her autopsy examination of Manus. Rather, Defendants contend Dr. Barnhart is not qualified to testify with regard to the cause and manner of the injury that ultimately led to Manus' death. Specifically, Defendants seek to exclude any testimony by Dr. Barnhart that Manus suffered a cervical fracture during an altercation with law enforcement while being taken into custody on September 7, 2010.

At the evidentiary hearing on Defendants' motions, Dr. Barnhart testified that her opinions regarding the date and circumstances of Manus' neck injury were based on information contained in the initial autopsy permit documentation prepared by Webster County Certified Medical Examiner Investigator James Wells along with law enforcement statements and police reports, also provided to her by Wells. Defendants argue that Dr. Barnhart should not be allowed to testify as to the cause and manner of Manus' injury because she admittedly based her opinions on information she received from Wells. However, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987) (citation omitted). And while the Fifth Circuit has additionally recognized that "[i]n some cases . . . the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion," id., concerns about exposing the jury to misleading expert opinions are greatly reduced in the context of a nonjury trial.

As the Fifth Circuit has explained, "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." Whitehouse Hotel Ltd. P'ship v.

6

C.I.R., 615 F.3d 321, 330 (5th Cir. 2010) (citing Gibbs, 210 F.3d at 500). The comments of the United States District Court for the Eastern District of Louisiana on this issue are particularly helpful in understanding the Court's duty:

> In the wake of Daubert, several courts have recognized that in the context of a bench trial, as is the case here, "the Daubert gatekeeping obligation is less pressing" because the gatekeeper and trier of fact are the same. Volk v. United States, 57 F.Supp.2d 888, 896 n. 5 (N.D. Cal. 1999). See also Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1301-02 (Fed. Cir. 2002) (explaining that in the context of a bench trial the Daubert standard must still be applied but the concerns about expert evidence misleading a jury "are of lesser import"); Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); Magistrini v. One Hour Martinizing Dry Cleaning, 180 F.Supp.2d 584, 596 n. 10 (D.N.J. 2002) ("[W]here the court itself acts as the ultimate trier of fact at a bench trial, the Court's role as a gatekeeper is arguably less essential."); Fierro v. Gomez, 865 F.Supp. 1387, 1395 n. 7 (N.D. Cal. 1994), aff'd, 77 F.3d 301 (9th Cir. 1996), *vacated and remanded on other grounds,* 519 U.S. 918, 117 S. Ct. 285, 136 L. Ed. 2d 204 (1996), *modified on other grounds on remand,* 147 F.3d 1158 (9th Cir. 1998) (concluding that, in the context of a nonjury trial, under Daubert it is better to "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test 'shaky but admissible evidence' " than to exclude expert evidence altogether (quoting Daubert)). And as Judge Posner has observed: "Daubert requires a binary choice-admit or exclude-and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves." SmithKline Beecham Corp. v. Apotex Corp., 247 F.Supp.2d 1011, 1042 (N.D. Ill. 2003) (sitting by designation), *aff'd on other grounds,* 403 F.3d 1331 (Fed. Cir. 2005).

Johnson v. Big Lots Stores, Inc., 2008 WL 1930681, at *2 (E.D. La. Apr. 29, 2008); accord Enniss Family Realty I, LLC v. Schneider Nat. Carriers, Inc., 916 F. Supp. 2d 702, 714 (S.D. Miss. 2013), Harris v. Bruister, 2013 WL 6805155, at *18 (S.D. Miss. Dec. 20, 2013). Accordingly, the Court DENIES Defendants' Motion to Exclude as to Dr. Barnhart's testimony.

*Autopsy Report*

The Court's foremost concern regarding the admissibility of the autopsy report prepared by Dr. Barnhart is whether the report is inadmissible hearsay and if so, whether it is subject to a recognized exception. An out of court statement offered to prove the truth of the matter asserted,

7

or hearsay, is ordinarily not admissible. FED. R. EVID. 801(c), 802. Plaintiffs indicated at the evidentiary hearing that they would seek to introduce the autopsy report through one of the exceptions outlined in Rule 803, specifically the regularly conducted business activity exception of 803(6)[6] and/or the public records exception of 803(8).[7] FED. R. EVID. 801(6),(8).[8]

The Fifth Circuit has recognized autopsy reports as falling within the business records exception, see Fields v. City of S. Houston, Tex., 922 F.2d 1183, 1191 n.9 (5th Cir. 1991), and other circuits have held them admissible under both the business records exception and the public records exception. See Wood v. Valley Forge Life Ins. Co., 478 F.3d 941, 945-46 (8th Cir. 2007) (holding that death certificate and autopsy report both admissible without redactions as business records) (citation omitted); United States v. Feliz, 467 F.3d 227, 237 (2d Cir. 2006) (holding autopsy report fit within both business record and public record exceptions), cert. denied, 549 U.S. 1238, 127 S. Ct. 1323, 167 L. Ed. 2d 132 (2007); Sosna v. Binnington, 321

---

[6] Rule 803(6) provides for an exception to the rule against admitting hearsay in the case of:
  A record of an act, event, condition, opinion, or diagnosis if:
    (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
    (C) making the record was a regular practice of that activity;
    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
    (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.
FED. R. EVID. 803(6).

[7] Rule 803(8) states that "[a] record or statement of a public office" is exempt from the rule against hearsay if:
  (A) it sets out:
    (i) the office's activities;
    (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
    (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
  (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.
FED. R. EVID. 803(8).

[8] Plaintiffs also discussed the possibility of invoking the records of vital statistics exception of Rule 803(9), but retreated from that position before the conclusion of oral argument. See Fed. R. Evid. 803(9) (excluding from the rule against hearsay any "record of a birth, death, or marriage, if reported to a public office in accordance with a legal duty."). Thus, the Court reserves ruling on whether autopsy reports properly fall under this exception.

F.3d 742, 747 (8th Cir. 2003) (holding autopsy report properly admitted under Rule 803(6) business records exception).

Further, the Fifth Circuit has held that "[o]pinions and conclusions, as well as facts," are covered by Rule 803(8). Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1305 (5th Cir. 1991). Under either exception, however, otherwise admissible hearsay may be excluded where such evidence is deemed to be untrustworthy. FED. R. EVID. 803(6)(E), 803(8)(B). Because there is a presumption in favor of admissibility and trustworthiness, the party seeking to exclude such evidence bears the burden of showing a lack of trustworthiness. Moss, 933 F.2d at 1305. Defendants challenge the autopsy report because Dr. Barnhart based her opinions and conclusions with regard to the date and circumstances of Manus' initial injury upon the information provided to her by Wells. However, similar to expert testimony, "complaints that [a] report is incomplete or inaccurate go to the weight afforded the report rather than to its admissibility." Eason v. Fleming Cos, Inc., 4 F.3d 989, 1993 WL 13015208, at *3 (5th Cir. Aug. 24, 1993) (citing Moss, 933 F.2d at 1307). Thus, the Court finds Defendants have not met their burden to prove that the autopsy report is untrustworthy and their Motion to Exclude is DENIED.

<u>Plaintiffs' Motion to Exclude Expert Testimony of E. Thomas Cullom, III, M.D.</u>

Similar to Defendants' position with regard to Dr. Barnhart's proposed testimony, Plaintiffs challenge only a portion of the proposed testimony of E. Thomas Cullom, III, M.D. Specifically, Plaintiffs argue that Dr. Cullom "offered new opinions not contained in his designation or report" when deposed for trial purposes on June 20, 2014 and that his testimony should therefore be limited only to the opinions timely disclosed. Essentially, Plaintiffs argue that Dr. Cullom did not reveal the basis for his opinions until his June deposition and that that basis is insufficient because it did not include "a review of all the evidence" in this case. In particular, Plaintiffs assert that "Dr. Cullom revealed for the first time the basis for his opinion

that Manus' neck injury was not the result of the subject September 7, 2010 incident – the deposition and EMT notes of paramedic Corrie Bennett."

The Court finds Plaintiffs' arguments to be unavailing. Dr. Cullom's expert report, which Defendants served on Plaintiffs on August 20, 2012 as an exhibit to Defendants' designation of Dr. Cullom as an expert, includes Dr. Cullom's "opinion to a reasonable degree of medical certainty that it is very unlikely that [Manus] had a fracture/subluxation or a spinal cord injury at the time he was evaluated by Ms. Bennett on September 8, 2010." Dr. Cullom explicitly states in his report that he reviewed Bennett's report and deposition testimony and that, in addition to other evidence, he based his opinion on those materials. Thus, the Court finds that Plaintiffs' were on notice of the basis of Dr. Cullom's opinions at the time Defendants designated him as an expert witness.

Likewise, the Court finds Plaintiffs' argument that Dr. Cullom offered opinions regarding the findings of Plaintiffs' own experts for the first time at his deposition to be without merit. Defendants state in their designation of Dr. Cullom as an expert that, among other things, they expect him to "give his expert opinion regarding the type of force associated with this type of injury and specifically with the type of injury Conway Manus was discovered to have after September 14, 2010." That Dr. Cullom did not offer an opinion regarding whether Manus' injury could have been caused by being hit with a baseball bat until Plaintiffs' counsel specifically elicited such testimony at his deposition, does not render Defendants' disclosure as incomplete. Plaintiffs were on notice that Dr. Cullom would offer his opinion with regard to the type of force that likely caused Manus' injury.

Similarly, Defendants' stated in their expert designation that Dr. Cullom "also will testify as to his expert opinion regarding when Conway Manus' suffered the C6-C7 fracture/subluxation and whether, based on the evidence and testimony in this case, this injury took place on or after

September 7, 2010." Further, Dr. Cullom stated in his report that "Mr. Manus's severe spinal injury occurred sometime after September 8, 2010, and would not have been recognized as a serious medical problem until after September 8, 2010." Thus, Plaintiffs were certainly aware that Dr. Cullom disagreed with their own expert's opinion and the death certificate and autopsy report that Manus' injury occurred during an altercation with law enforcement on September 7, 2010.

Plaintiffs acknowledge that the motions deadline expired prior to their filing the instant motion. Indeed, pursuant to the local rules of this district, "motions challenging an opposing party's expert must be filed no later than fourteen calendar days after the discovery deadline." L.U.Cɪv.R. 7(b)(2)(C). The original case management order required all discovery in this matter be completed by May 10, 2012 and set May 24, 2012 as the deadline for filing "[a]ll dispositive motions and Daubert-type motions challenging another party's expert." Those deadlines were subsequently extended with the final deadline for discovery being October 2, 2013 and the final deadline for motions being October 14, 2013.

Plaintiffs filed their motion to exclude Dr. Cullom's testimony on July 10, 2014 – almost nine months after the deadline. Whereas the Court has found no merit in Plaintiffs' argument that Dr. Cullom's deposition testimony included previously undisclosed opinions, the Court likewise finds no basis for excusing the untimeliness of Plaintiffs' motion and same is hereby DENIED. See L.U.Cɪv.R. 7(b)(11) ("Any nondispositive motion served beyond the motion deadline imposed in the Case Management Order may be denied solely because the motion is not timely served."); Brawhaw ex rel. Hays v. Mariner Health Care, Inc., 2008 WL 2906620 (N.D. Miss. July 24, 2008) (denying motions *in limine* seeking exclusion of expert testimony on the basis that such motions were untimely).

Additionally, as the Court has explained, in the context of a bench trial, concerns surrounding the admission of expert testimony are diminished because, "there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." Whitehouse Hotel Ltd. P'ship, 615 F.3d at 330. Further, Plaintiffs' contention that Dr. Cullom's testimony should be excluded because he did not review "all of the evidence and testimony in this case" goes to the weight the Court should assign Dr. Cullom's testimony, not its admissibility. Viterbo, 826 F.2d at 422. Accordingly, Plaintiffs' Motion to Exclude [340] is DENIED.

## CONCLUSION

For the foregoing reasons, the Court finds that Municipal Defendants' Motion to Exclude [283] and Plaintiffs' Motion to Exclude [340] are not well taken and are DENIED.

SO ORDERED, this the 6th day of August, 2014.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE